UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

Ravenna T. Bush,

                                Plaintiff,

         v.

Commissioner of Social Security,

                                Defendant.

**Decision and Order**

18-CV-809 HBS
(Consent)

## I.   INTRODUCTION

The parties have consented to this Court's jurisdiction under 28 U.S.C. § 636(c). The Court has reviewed the Certified Administrative Record in this case (Dkt. No. 4, pages hereafter cited in brackets), and familiarity is presumed. This case comes before the Court on cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. (Dkt. Nos. 7, 10.) In short, plaintiff is challenging the final decision of the Commissioner of Social Security (the "Commissioner") that she was not entitled to Supplemental Security Income under Title XVI of the Social Security Act. The Court has deemed the motions submitted on papers under Rule 78(b).

## II.   DISCUSSION

"The scope of review of a disability determination . . . involves two levels of inquiry. We must first decide whether HHS applied the correct legal principles in making the determination. We must then decide whether the determination is supported by substantial evidence." *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) (internal quotation marks and citations omitted). When a district court reviews a denial of benefits, the Commissioner's findings as to any fact, if supported by substantial evidence, shall be conclusive. 42 U.S.C. § 405(g). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate

to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).

The substantial evidence standard applies to both findings on basic evidentiary facts, and to inferences and conclusions drawn from the facts. *Stupakevich v. Chater*, 907 F. Supp. 632, 637 (E.D.N.Y. 1995); *Smith v. Shalala*, 856 F. Supp. 118, 121 (E.D.N.Y. 1994). When reviewing a Commissioner's decision, the court must determine whether "the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner. *Winkelsas v. Apfel*, No. 99-CV-0098H, 2000 WL 575513, at *2 (W.D.N.Y. Feb. 14, 2000). In assessing the substantiality of evidence, the Court must consider evidence that detracts from the Commissioner's decision, as well as evidence that supports it. *Briggs v. Callahan*, 139 F.3d 606, 608 (8th Cir. 1998). The Court may not reverse the Commissioner merely because substantial evidence would have supported the opposite conclusion. *Id.*

For purposes of Social Security disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

Plaintiff bears the initial burden of showing that the claimed impairments will prevent a return to any previous type of employment. *Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982).

Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the national economy and which the plaintiff could perform." *Id.*; *see also Dumas v. Schweiker*, 712 F.2d 1545, 1551 (2d Cir. 1983); *Parker v. Harris*, 626 F.2d 225, 231 (2d Cir. 1980).

To determine whether any plaintiff is suffering from a disability, the Administrative Law Judge ("ALJ") must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from continuing past relevant work; and whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; *Berry, supra*, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry then the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). However, the ALJ has an affirmative duty to develop the record. *Gold v. Secretary*, 463 F.2d 38, 43 (2d Cir. 1972).

To determine whether an admitted impairment prevents a plaintiff from performing past work, the ALJ is required to review the plaintiff's residual functional capacity ("RFC") and the physical and mental demands of the work done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the RFC. *Washington v. Shalala*, 37 F.3d 1437, 1442 (10th Cir. 1994).

Here, plaintiff challenges the ALJ's decision to give little weight to the opinions of a treating psychiatrist, Jeffrey Kashin, M.D. Dr. Kashin treated plaintiff's schizophrenia and drug use for

3

about two years when he offered his disability opinions. Plaintiff argues that the ALJ should have accorded more weight to a state disability evaluation form that Dr. Kashin completed for plaintiff on June 7, 2016. [375–76.] On the evaluation form, Dr. Kashin checked off that plaintiff was "very limited" across a broad range of indicia of physical and mental functioning. Plaintiff argues further that the ALJ overemphasized treatment records from Dr. Kashin and others suggesting that she was adequately handling activities of daily living:

> Although the records indicated Plaintiff's medication was "helping" and did not indicate complaints of certain symptoms or side effects, they also indicated Plaintiff was never fully stable and still experienced persistent symptoms. Plaintiff was receiving injections of 37.5 mg of Risperdal Consta twice a month (tr. 40, 372), a dose is higher than the typical recommended dose for schizophrenia treatment. *See Risperidal Constra*, RxList (last visited Jan. 16, 2019), https://www.rxlist.com/risperdal-consta-drug.htm#description. Yet, despite undergoing these injections and maintaining sobriety, she struggled to consistently attend group therapy and reported difficulty with negative emotions/symptoms. (Tr. 389, 399, 403, 409, 411, 413, 415). She testified she still did not understand things and had difficulty concentrating. (Tr. 41). The evidence clearly undermines the ALJ's rationale.

(Dkt. No. 7-1 at 10; *see also* Dkt. No. 11 at 3.) The Commissioner responds by downplaying the importance of checked-off opinions from Dr. Kashin that look like this:

| IV. FUNCTIONAL LIMITATIONS (related to medical findings noted in Section III): *(check column that applies)* | | | | | | | |
|---|---|---|---|---|---|---|---|
| a.) Physical Functioning | No. Evidence of Limitations | Moderately Limited | Very Limited | b.) Mental Functioning | No Evidence of Limitations | Moderately Limited | Very Limited |
| Walking | | | | Understands and remembers instructions | | | |
| Standing | | | | Carries out instructions | | | |
| Sitting | | | | Maintains attention/concentration | | | |
| Lifting, Carrying | | | | Makes simple decisions | | | |
| Pushing, Pulling, Bending | | | | Interacts appropriately with others | | | |
| Seeing, Hearing, Speaking | | | | Maintains socially appropriate behavior without exhibiting behavior extremes | | | |
| Using Hands | | | | Maintains basic standards of personal hygiene and grooming | | | |
| Stairs or other Climbing | | | | Appears able to function in a work setting at a consistent pace | | | |
| Other: | | | | Other: | | | |

[376.] The Commissioner also emphasizes that plaintiff's clinical records—including records from Dr. Kashin—consistently indicated that medication controlled her symptoms and that she was capable of maintaining activities of daily living:

4

> In any event, under the regulations, a treating source's opinion is only entitled to controlling weight if it is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence of record. 20 C.F.R. § 404.1527(c)(2). Consistent with this, the ALJ pointed out that Dr. Kashin's extreme assessment—opining that Plaintiff was unable to work because she was not psychiatrically stable and was "very limited" in all eight areas of functioning listed in the form—was at odds with his own treatment notes and the evidence as a whole (Tr. 26-27). Specifically, with respect to treatment notes, the ALJ highlighted that, just prior to Dr. Kashin's opinion: (1) Plaintiff reported the medication was helping her "a lot"; (2) she indicated her sleep, appetite, and activities of daily living were good; (3) she presented in good contact and control, denied paranoia, depression, substance use, side effects, and lethality; and (4) Dr. Kashin made no changes to treatment and did not schedule a follow up for three months (Tr. 26, *see* Tr. 380). The ALJ also noted that, just after Dr. Kashin's opinion, Plaintiff's condition and Dr. Kashin's response was essentially unchanged, despite the fact that she had missed her medication for several weeks (Tr. 26, *see* Tr. 381). The ALJ also cited the treatment notes more generally, which showed that when compliant with treatment, Plaintiff presents with good control, has no overt psychosis, and is stable (Tr. 27, *see* Tr. 378, 380, 382 ). The ALJ further noted that Plaintiff reported that when she is on medication, her symptoms are well managed, she has a good mood, and she feels much better (Tr. 27, *see* Tr. 10F 376–77, 380, 397, 399, 403, 405, 409, 411, 415). In addition, the ALJ pointed out that Dr. Kashin's opinion was inconsistent with Plaintiff's activities of daily living, which show that she [was] able to care for herself, assist in the care of her children, and attend school (Tr. 27). Plaintiff's challenges to this reasonable and regulation-tethered analysis are unpersuasive.

(Dkt. No. 10-1 at 16.)

The Commissioner has the better argument here. When plaintiff began treatment with Mid-Erie Counseling and Treatment Services in 2013, she was "diagnosed with schizophrenia and has had problems with various mind altering substances which include: cannabis, crack cocaine, alcohol and has been testing positive for all." [256; *see also* 319, 332.] Plaintiff was prescribed medication but had a "long history of non-compliance with medications and treatment." [274.] By the time of Dr. Susan Santarpia's psychiatric evaluation on December 9, 2014, plaintiff had good thought processes; intact attention, concentration, and memory skills; average cognitive functioning; and fair insight and judgment. [263–64.] The improvement came with the assistance of medication. *Cf. Priel v. Astrue*, 453 F. App'x 84, 87 (2d Cir. 2011) (summary order) (Commissioner affirmed where "the

5

ALJ found that Priel's schizoaffective disorder was well controlled with Haldol"). In 2015, plaintiff improved her functioning by sticking to her medication and by abstaining from use of controlled substances. [363.] *See Lee v. Comm'r*, No. 5:06-CV-710 (LEK), 2009 WL 2986642, at *5 (N.D.N.Y. Sept. 15, 2009) ("It must also be borne in mind that it is Plaintiff's burden to prove that her drug and/or alcohol use is not a contributing factor material to disability."). In April 2015, Dr. Kashin himself noted that plaintiff "denies increased stressors, medication side effects, any lethality whatsoever. Reports mood has been good." [373.] By July 2015, plaintiff told Dr. Kashin that she felt much better on an increased dose of medication and that "the voices have subsided altogether with the increased dose of Risperdal Consta. She denies hallucinations, delusions, depression, side effects or any lethality. Sleep, appetite and ADLs are good." [380.] The treatment regimen continued into June 2016. [384.] *Cf. Jackson v. Comm'r*, No. 3:14-CV-0350 GTS/ATB, 2015 WL 2356738, at *10 (N.D.N.Y. May 15, 2015) ("The ALJ found that, although plaintiff showed clinical symptoms consistent with the diagnoses of depression and anxiety, her mental health symptoms were adequately controlled with medication and counseling sessions."). Against these clinical records, the checkboxes shown above stand out as inadequately considered. *See Shipp v. Colvin*, No. 16-CV-919 HBS, 2018 WL 4870748, at *3 (W.D.N.Y. Oct. 9, 2018) ("The remainder of the checkmarks in the questionnaire come with no explanation and are too conclusory to oppose a consistent medical record. The Second Circuit has held that such standardized form opinions are only marginally useful for purposes of creating a meaningful and reviewable factual record.") (internal quotation marks and citations omitted). The bulk of the clinical records thus show that medication and other treatment improved plaintiff's condition to the point where she was capable of light work, as the ALJ concluded. Because any symptoms of hallucinations or delusions subsided completely, plaintiff's situation differs from the situation in cases such as *Boyd v. Astrue*, No.

6

CIV309CV00108CFDTPS, 2009 WL 3202365 (D. Conn. Sept. 17, 2009), where "it is impossible to discern the extent to which the plaintiff's substance abuse impacts his mental illness or the extent to which his psychiatric symptoms and functioning would improve if he ceased using substances." *Id.* at *2.

## III. CONCLUSION

The Commissioner's final determination was supported by substantial evidence. For the above reasons and for the reasons stated in the Commissioner's briefing, the Court grants the Commissioner's motion (Dkt. No. 10) and denies plaintiff's cross-motion (Dkt. No. 7).

The Clerk of the Court is directed to close the case.

SO ORDERED.

　　　　　　　　　　　　　　　　__/s Hugh B. Scott_____
　　　　　　　　　　　　　　　　Hon. Hugh B. Scott
　　　　　　　　　　　　　　　　United States Magistrate Judge

DATED: October 10, 2019